UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| C.M.E. O/B/O W.P.B., <br><br> Plaintiff, <br><br> v. <br><br> SHORELINE SCHOOL DISTRICT, <br><br> Defendant. | CASE NO. 2:19-cv-02019-RAJ-BAT <br><br> **REPORT AND RECOMMENDATION** |

This is an appeal of an administrative decision overriding Parent's refusal to consent to an initial evaluation of Student for special education services under the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1400. Plaintiff, CME ("Parent") as guardian on behalf of W.P.B. ("Student"), moves for summary judgment. Dkt. 38. Defendant Shoreline School District ("District") opposes the motion and filed its responsive brief consistent with the Court's scheduling order. Dkt. 39. Parent filed a reply (Dkt. 41) and opposition brief (Dkt. 45), and District filed a reply (Dkt. 46).[1] The sealed Administrative Record ("AR") was filed on July 30, 2020.[2] All of the parties' filings have been considered by the Court.

---

[1] *See* Dkt. 42 (Order Regarding Noting Dates and Consideration of Motions).

[2] References to the administrative record utilize the AR's bold numbering located on the top right-hand side of each page.

REPORT AND RECOMMENDATION - 1

Based on a careful review of the administrative record and the parties' filings, the undersigned recommends that the Court affirm the administrative ruling and deny Plaintiff's motion for summary judgment (Dkt. 38).

## I. FACTUAL AND PROCEDURAL BACKGROUND

A.   Student's January 2019 IEP

Student received special education services from the District throughout elementary school, middle school, and four years of high school. His most recent IEP was developed in January 2019. AR at 2, 109. The IEP provided that in fall 2019, after completing four years of high school, Student would begin receiving services through the District's community-based transition program at Shoreline Community College. AR at 115, 126. Through this placement, Student would attend special education classes at the community college and participate in semester long vocational internships. AR 126. This placement was based upon independent evaluations of Student, which recommended that he learn academic and vocational skills in a functional setting. AR at 128. The placement decision also aligned with District staff's observations of Student as a learner. *Id*. Specifically, staff observed that Student enjoys active work and is more productive in a setting where assigned tasks are not academic or scholastic in nature. *Id*.

Parent disagreed with the District's decision for Student to be placed in the transition program. *Id*. Instead, Parent wanted Student to continue his education in a high school academic setting in fall 2019. *Id*. The IEP team discussed and considered Parent's proposal at the January 2019 IEP team meeting. *Id*.; AR at 143. Ultimately, the District members of the IEP team rejected Parent's proposal that Student remain at the high school because this placement would not have been Student's least restrictive environment. AR at 128. As a result, Student's IEP

provided that beginning in fall 2019, Student would move to the District's transition program. AR at 115.

B.      Parent's Revocation of Consent

Parent continued to object to placement in the District's transition program, and by letter dated February 1, 2019, Parent informed the District that she would be homeschooling Student on a part-time basis effective February 4. AR at 146. Parent believed that this allowed her to assume the role of Student's "IEP Case Manager of record" and to reject portions of Student's IEP that she disagreed with. AR at 154. In particular, Parent wished to reject Student's placement in the transition program beginning fall 2019. *Id*.

On February 5, the District issued a prior written notice (PWN) acknowledging Parent's decision to homeschool Student on a part-time basis. AR at 149. The PWN informed Parent that the District would implement the part-time schedule that she had requested. *Id*. The PWN also informed Parent that Student's IEP continued to be available to him, including a full day of school. *Id*. The District disagreed with Parent's position that her decision to homeschool Student part-time allowed her to unilaterally modify portions of Student's IEP. AR at 162.

Parent then revoked her consent for Student to receive special education services by letter dated June 20, 2019. *Id*. Parent acknowledged that her decision would return Student to his prior status as a general education student. *Id*.

On June 26, the District issued a PWN acknowledging Parent's revocation of consent for Student to receive special education services. AR at 165. The PWN also informed Parent that once her revocation was effective, Student would no longer be eligible for the services and protections available to him under the IDEA. *Id*.

REPORT AND RECOMMENDATION - 3

C.      Parent's New Request for An Initial Evaluation

Approximately three weeks after revoking her consent, Parent notified the District that she wished to have Student evaluated to receive special education services. AR at 168. In her request, Parent acknowledged that Student's last evaluation was two years old and that "a new evaluation [wa]s warranted." *Id*.

In response, Karena Valiquette, a school psychologist with the District emailed Parent to schedule a team meeting to plan the scope of Student's initial evaluation for special education services. AR at 174. On September 11, the team (including Parent) met to create an evaluation plan for Student. AR at 86, 185. Following the meeting, Ms. Valiquette provided Parent with a prior written notice identifying the proposed components of the evaluation and requesting her consent to evaluate Student for special education services. AR at 86. On September 12, Parent returned the consent form with her signature and several handwritten conditions that modified the scope of the evaluation. AR at 86, 195. Specifically, Parent requested that the evaluation areas be limited to reading, math, and written expression. *Id*. Parent also asked the District to review existing data as part of the evaluation. *Id*. Finally, Parent refused to consent to the proposed age appropriate transition assessment or interview of Student as part of the evaluation. *Id*.

In response, the District revised the evaluation description to incorporate Parent's request that the academic evaluation be limited to the areas of reading, math, and written expression. *Id*. The District also agreed to review Student's IEP progress report and math data provided by Parent as part of the evaluation. *Id*. However, the proposed evaluation continued to include the age-appropriate transition assessment and interview of Student. *Id*. The purpose of the age-appropriate transition assessment was to explore Student's needs, strengths, and preferences,

REPORT AND RECOMMENDATION - 4

1 which in turn would inform Student's postsecondary goals and transition plan of the IEP. AR at

2 87. The assessment would have entailed asking Student questions related to his dream job,

3 interests following high school, and the kinds of activities he enjoys during school. *Id*. The IEP

4 team would then rely on this information to develop an IEP that included appropriate measurable

5 postsecondary goals for Student. *Id.*

6 Parent continued to refuse to consent to the age-appropriate transition assessment, and on

7 September 18, returned another signed consent form with handwritten notations that modified

8 the scope of the proposed evaluation. AR at 201. Again, Parent noted that she did not consent to

9 the transition assessment or interview of Student as part of the evaluation. *Id*. Parent also emailed

10 Ms. Valiquette on September 18 and explained that she would not consent to the transition

11 assessment because she believed that homeschool students were not required to perform

12 transition activities. AR at 203.

13 In response, the District explained to Parent that the transition assessment was a

14 procedural requirement of the IDEA. AR at 204, 209. The District also offered to pay for an

15 outside provider to conduct the age appropriate transition assessment of Student. AR at 209. The

16 District hoped that this offer would enable the evaluation to move forward so that Student could

17 qualify for special education services. *Id*. Parent refused this offer and continued to withhold her

18 consent to an evaluation that included the age-appropriate transition assessment. AR at 210-11.

19 Because the conditions Parent placed on her consent prevented the District from conducting a

20 complete, appropriate evaluation under the IDEA, the District considered Parent's conditioned

21 consent to be a refusal of consent. AR at 204.

22

23

REPORT AND RECOMMENDATION - 5

D.    Refusal to Consent

If a parent refuses to consent to an initial evaluation, the IDEA authorizes the school district to request a due process hearing in order to pursue the initial evaluation. 20 U.S.C. § 1414(a)(1)(D)(ii). The District requested a due process hearing leading to the administrative proceeding and ALJ decision under review here. The District sought an order that the proposed initial evaluation be conducted over the Parent's refusal to consent. AR 4. The Parent sought an order that the District evaluate the Student only in the areas for which the Parent provided consent. *Id.*

E.    ALJ Ruling

The ALJ ruled as follows:

> 19.    Because the District is obligated to comprehensively evaluate the Student and specifically obligated to conduct an age appropriate transition assessment, the District's proposed initial evaluation of the Student is reasonable. The age-appropriate transition assessment and interview of the Student will allow the District to sufficiently determine the Student's needs and to comply with the law regarding transition programming. Additionally, it will provide information relevant to the main area of dispute between the Parent and the District members of the IEP team, which is the Student's needs with respect to transition services.
>
> 20.    The District has established that the Parent's refusal to consent to the initial evaluation of the Student should be overridden. The District may conduct an initial evaluation of the Student as set forth in the PWN dated September 18, 2019, and the corresponding initial evaluation consent form.

AR 7.

## II. STANDARDS OF REVIEW

A.    Deference to the Administrative Findings

In an appeal from a due process hearing under the IDEA, this Court reviews the administrative record, considers any new evidence offered by the parties, and "make[s] an

REPORT AND RECOMMENDATION - 6

independent judgment based on a preponderance of the evidence and giving due weight to the hearing officer's determinations." *Capistrano Unified Sch. Dist. v. Wartenberg*, 59 F.3d 884, 892 (9th Cir. 1995). Under this standard of review, "complete de novo review of the administrative proceeding is inappropriate." *Van Duyn v. Baker Sch. Dist. 5J*, 502 F.3d 811, 817 (9th Cir. 2007). Instead, this Court shall give "due weight" to the ALJ's decision, with particular deference to the extent it was "'thorough and careful.'" *J.W. ex rel. J.E.W. v. Fresno Unified Sch. Dist.*, 626 F.3d 431, 440 (quoting *R.B. v. Napa Valley Unified Sch. Dist.*, 496 F.3d 932, 942-43 (9th Cir. 2007)). "'[C]ourts should not substitute their own notions of sound educational policy for those of the school authorities which they review.'" *Gregory K. v. Longview Sch. Dist.*, 811 F.2d 1307, 1311 (9th Cir. 1987) (quoting *Wilson v. Marana Unified Sch. Dist.*, 735 F.2d 1178, 1183 (9th Cir. 1984)).

As the party seeking relief in this Court, Parent bears the burden of demonstrating that the ALJ's decision should be reversed. *Fresno Unified*, 626 F.3d at 438.

B       Summary Judgment Standard

A motion for summary judgment may be granted in the context of an administrative hearing "if the written record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." WAC 10-08-135; WAC 392-172A-05100(6) (incorporating Chapter 10-08 WAC by reference for special education due process hearings). The moving party carries the initial burden of establishing the absence of a genuine issue of material fact. *Heko Servs., Inc. v. ChemTrack Alaska, Inc.*, 418 F. Supp. 3d 656, 659 (W.D. Wash. 2019). Once the moving party meets its burden, to defeat the motion for summary judgment, the nonmoving party must produce evidence showing that there are material facts in dispute. *Id*. at 660.

After the filing of the administrative record, but before the District filed its responsive brief, Plaintiff filed her motion for summary judgment. However, "as a practical matter," the Court must nevertheless follow the IDEA's mandate to "read the administrative record, consider the new [additional] evidence, and make an independent judgment based on a preponderance of evidence and giving due weight to the hearing officer's determinations." *Capistrano Unified Sch. Dist. v. Wartenberg*, 59 F.3d 884, 892 (9th Cir.1995).

## III. DISCUSSION

"The IDEA is a comprehensive educational scheme conferring on disabled students a substantive right to public education." *Fresno Unified*, 626 F.3d at 432. Its stated purpose is to "ensure that all children with disabilities have available to them a free appropriate public education ("FAPE") that emphasizes special education and related services designed to meet their unique needs. . ." 20 U.S.C. § 400(d)(1)(A). To achieve this end, the IDEA requires school districts to identify, locate, and evaluate children with suspected disabilities and to ensure that they receive necessary special education and related services. 20 U.S.C. § 1412(a)(3)(A).

The IDEA and its implementing regulations set forth an extensive set of procedural requirements that are meant to ensure the initial evaluation is complete and can be reliably used to develop an appropriate IEP tailored to the child's needs. *Timothy O. v. Paso Robles Unified Sch. Dist.*, 822 F.3d 1105, 1111 (9th Cir. 2016). The district must assess the child "in all areas related to the suspected disability." 34 C.F.R. § 300.304(c)(4). The initial evaluation must be "sufficiently comprehensive to identify all of the child's special education and related services needs, whether or not commonly linked to the disability category in which the child has been classified." 34 C.F.R. § 300.304(c)(6).

In conducting an initial evaluation, the District must gather relevant functional, developmental, and academic information through a variety of assessment tools and strategies. 20 U.S.C. § 1414(b)(2)(A); WAC 392-172A-03020(2)(a). The IDEA prohibits the District from relying on "any single measure or assessment as the sole criterion" in determining an appropriate educational program for the child. 20 U.S.C. § 1414(b)(2)(B); WAC 392-172A-03020(2)(b). The information gathered through the evaluation process must assist in determining the content of the student's IEP. WAC 392-172A-03020(2)(a)(ii).

Every IEP in effect after the child reaches the age of 16 must include "[a]ppropriate postsecondary goals based upon age-appropriate transition assessments related to training, education, employment, and where appropriate, independent living skills" and "[t]he transition services . . . needed to assist the child in reaching those goals." 34 C.F.R. § 300.320(b)(1)-(2); WAC 392-172A-03090(1)(k)(i). Transition services must be designed in a "results-oriented process" meant to improve the functional and academic achievement of the child and to enable the child to move from school to post-school activities, "including postsecondary education, vocational education, integrated employment…, continuing and adult education, adult services, independent living, or community participation." 20 U.S.C. § 1401(34)(A); see also 34 C.F.R. § 300.43(a)(1). Failure to base a student's IEP on an age-appropriate transition assessment is a procedural violation of the IDEA. *Butte Sch. Dist. No. 1 v. C.S.*, 817 F. App'x 321 (9th Cir. 2020).

Parent argues that the ALJ erred because the District "does not have authority to consent override a homeschooled student for the purpose of an initial evaluation under the IDEA and WAC 392-172A-03000, 4(c)" (Dkt. 2-2, p. 1); and that new evidence discovered in a second

REPORT AND RECOMMENDATION - 9

administrative proceeding[3] was deliberately omitted by the District and not considered by the ALJ (Dkt. 38, p. 2).

A.     Consent Override

After Parent notified the District that she wanted Student to be evaluated for special education services, a study team met and created an initial evaluation plan with Parent's participation. After the meeting, the District provided the Parent with a PWN identifying the proposed evaluation areas and requesting her signed written consent. AR 3. Parent signed the consent form with a number of handwritten changes, which the District accommodated by revising the scope of the evaluation to limit academic testing to the areas specified by the Parent and to review existing classroom data and math data submitted by the Parent. Parent's proposed changes were submitted in a second PWN, which the Parent signed but which she again revised. This time, Parent objected to the age-appropriate transition assessment and interview of the Student. *Id.*, ¶¶ 6-7.

The ALJ found that "[b]ecause the Student's evaluation requires an age-appropriate transition assessment and interview of the Student to be sufficiently comprehensive, especially considering that his needs in that area are in dispute, the District's proposed initial evaluation is reasonable and the Parents' failure to consent to those portions of the evaluation constitute a refusal to consent to the initial evaluation in its entirety." *Id.*, ¶ 10.

When a parent refuses to consent to an initial evaluation for special education services, the district may, but is not required to, pursue an initial evaluation through due process procedures. 20 U.S.C. § 1414(a)(1)(D)(ii)(I), WAC 392-172A-03000(1)(e). A parent's refusal to

---

[3] OSPI Docket No. 06-2019-OSPI- 00796, Cause 2019-SE-0090 is a related, but separate administrative proceeding not at issue here.

consent may be overridden by an ALJ, "who must look to the appropriateness of the District's proposed evaluation." *Fife Sch. Dist*., 45 IDELR 86, 2005-SE-0072 (Wash. SEA 2005) (overriding parent's refusal to consent to an occupational therapy evaluation where "the evidence indicates that the Student needs to have O/T evaluation to assess his visual-motor skills which will help the IEP team determine what intervention must be included as part of his special education program."). The standard for overriding parental refusal to consent to an evaluation is demonstration of "reasonable need" by the district. *See Seattle Sch. Dist*., 106 LRP 2265, 2004-SE-0018 (Wash. SEA 2004) ("[T]he Parents have refused to allow Children's Home Society to evaluate the Student. Therefore, the District is correct in requesting that the refusal to consent be overridden. At the time of the request..., the District was on notice the Student was a danger to himself and others. Under the circumstances, the request was reasonable."); *Cusick Sch. Dist*., 102 LRP 9971, 2001-SE-0091 (Wash. SEA 2001) ("Washington state has authorized school districts to override the refusal of a parent to grant consent to an evaluation through a due process hearing. In this case, the District has shown that its professionals have a reasonable belief that the student may have a disability. . . and that its additional evaluation activities are appropriate to that end.").

The ALJ did not err in concluding that a consent override here was reasonable. Meaningful parent participation and informed parental consent is a "core principle" of the IDEA. *M.M. v. Lafayette Sch. Dist*., 767 F.3d 842, 851 (9th Cir. 2014). A district must obtain informed consent from the child's parent before conducting an initial evaluation to determine if the child qualifies for special education services. 34 C.F.R. § 300.300(a); WAC 392-172A- 03000(1)(a). Although a parent may refuse consent to an entire proposed evaluation, a parent cannot refuse consent to select portions of the proposed evaluation. *See G.J. ex rel. E.J. v. Muscogee Cty. Sch.*

REPORT AND RECOMMENDATION - 11

*Dist.*, 704 F. Sup.2d 1299 (M.D. Georgia 2010), *aff'd G.J. v. Muscogee Cty. Sch. Dist*., 668 F.3d 1258, 1264 (11th Cir. 2012) (Where parents attempted to narrow the proposed evaluation by refusing certain proposed testing, the parents were held that the parents' "purported consent [wa]s not consent at all." *Id*.

The District was procedurally required to complete an age-appropriate transition assessment if a new IEP is to be developed for Student. See Butte, 817 F. App'x 321. The record reflects that the District provided the Parent with the opportunity to meaningfully participate in the IEP process, pursuant to 34 C.F.R. § 300.345 (1995). The District accommodated Parent's initial revisions, offered to pay for an outside provider to conduct the assessment, and when they could not ultimately agree on Parent's second proposed revisions, the District afforded Parent a due process hearing.

The ALJ appropriately found that the District's proposed evaluation was reasonable and necessary and appropriately ordered the evaluation over Parent's refusal to consent.

B. Effect of Dual Enrollment

Parent argues that the IDEA provides for a "Homeschool IEP." Dkt. 46, p. 7. However, Parent provides no authority for this position. The ALJ addressed the effect of Student's dual enrollment and Parent's argument that part-time attendance and homeschool rules allow her, rather than the District or an IEP team, to dictate the Student's special education program. AR at 6.

The ALJ reviewed Washington law, which provides that a home-based instructed student can attend public school part-time and that, when a student who is homeschooled and is enrolled in school part-time for special education or related services, the Student will be served through an IEP. AR, p. 6, ¶¶ 11, 12, 13. The ALJ concluded that, while Parent is correct that the

homeschool laws allow her significant discretion in how she implements the Student's homeschool program and give her discretion in selecting courses at the public school, the laws do not allow her to independently make decisions about the Student's special education. Instead, the special education rules regarding part-time students specifically state that such students are served through an IEP, which by definition, incorporates the IDEA's procedures for developing and implementing IEPs. AR, p. 6-7, ¶¶ 14-18 (quoting *Ms. S. v. Vashon Island Sch. Dist.*, 337 F.3d 1115, 1131 (9th Cir. 2003) (parents do not have the right to dictate any particular special education program). *See also* 34 C.F.R. § 300.300(d)(4) codified the Eighth Circuit's decision in *Fitzgerald v. Camdenton R-III Sch. Dist.*, 439 F.3d 773 (8th Cir. 2006) (IDEA's consent override provision may not be used in the case of a homeschooled student whose parents expressly waived any services under the IDEA but when a student is enrolled in a public school program, 34 C.F.R. § 300.300(d)(4) does not apply).

The ALJ correctly noted that the consent override provisions affirmatively apply to students enrolled or seeking to be enrolled in public school (WAC 392-172A-03000(1)(e)), and the more specific special education laws govern over the more general laws relating to all students (citing *Lake Washington Sch. Dist.*, Cause No. 2013-SE-0004. AR 7, p. 7. In addition, the ALJ has no authority to address laws other than special education laws. *Id.*

It is undisputed that Parent sought special education services from the District for Student. Dkt. 38, p. 8. It is also without dispute that every IEP in effect after the child reaches the age of 16 must include "[a]ppropriate postsecondary goals based upon age-appropriate transition assessments related to training, education, employment, and where appropriate, independent living skills" and "[t]he transition services . . . needed to assist the child in reaching those goals." 34 C.F.R. § 300.320(b)(1)-(2); WAC 392-172A-03090(1)(k)(i). Accordingly, the undersigned

concludes that the ALJ did not err in her conclusion that Student's dual enrollment does not allow the Parent to unilaterally select the Student's special education services or to dictate the areas of evaluation. In short, Parent was not entitled to a specialized "Homeschool IEP."

C.        January 2019 "Informal" Age Appropriate Transition Assessment

As discussed above, the ALJ appropriately ordered the District's reevaluation of Student over Parent's refusal to consent to allow the District to complete an IEP to include "[a]ppropriate postsecondary goals based upon age-appropriate transition assessments related to training, education, employment, and where appropriate, independent living skills" and "[t]he transition services . . . needed to assist [Student] in reaching those goals." *See* 34 C.F.R. § 300.320(b)(1)-(2); WAC 392-172A-03090(1)(k)(i). Parent argues, however, that she recently obtained new evidence that the District already had the information necessary to complete the IEP because the District conducted an "informal" age-appropriate transition assessment in developing Student's January 2019 IEP but failed to disclose this information to her (*i.e.*, the January 2019 Assessment).

Parent states she first learned of the January 2019 Assessment during the oral testimony of Dr. Scott Irwin in a separate administrative proceeding.[4] Dkt. 19, p. 20. Parent argues that only reason the District sought the due process administrative proceeding was because the October 2019 Age Appropriate Transition Assessment was "too old," yet the District had already performed the "new" January 2019 Assessment but intentionally left out this "material fact," leading the ALJ to "believe the last one from 2019 needed to be updated." Dkt. 38, pp. 1-4.

---

[4] Dr. Irwin's testimony in the second administrative proceeding is not contained in the administrative record in this case and it has not otherwise been admitted by this Court.

REPORT AND RECOMMENDATION - 14

The record reflects that this evidence is not new or disputed and is not material to the issues at hand.[5] The January 2019 Assessment is contained in Student's January 2019 IEP (Dkt. 38-3), which is specifically referenced in the ALJ's administrative decision. AR 2-3. Thus, the evidence is not new.

The District also does not dispute that an assessment was conducted as part of Student's IEP in January but (as is acknowledged by Parent *see* Dkt. 38, pp. 5-6), the assessment is not the type of comprehensive age-appropriate transition assessment contemplated by the IDEA. AR 3, ¶ 6. The age-appropriate transition assessment proposed in September 2019 involved interviewing Student and asking questions regarding his favorite classes, free time activities, and ambitions following high school. AR 87. According to the District, the purpose of this assessment was to comprehensively explore Student's needs, strengths, and preferences and to capture his voice as it relates to his goals following high school, to ensure an IEP that includes appropriate measurable postsecondary goals for Student. *Id*.

Regardless of whether the District previously conducted an age-appropriate assessment, the law requires the District to complete a new age-appropriate transition assessment in developing a new IEP for Student. *See* 34 C.F.R. § 300.320(b)(1)-(2); WAC 392-172A-03090(1)(k)(i); *Butte*, 817 F. App'x 321. Data related to Student's January 2019 IEP was obtained *before* June 20, 2019, when Parent revoked her consent for Student to receive special education services. Therefore, the District cannot reasonably rely on information (now

---

[5] Prior to the filing of the administrative record herein, Parent filed a motion to compel documents, to include the January 2019 Assessment. Noting that it was not known at the time of Parent's motion whether the January 2019 IEP and/or January 2019 Assessment were part of the OSPI administrative record, the Court granted the motion to compel a copy of the January 2019 Assessment only. Dkt. 29.

approaching two years old), in developing a new IEP that must reflect Student's current needs, strengths, and preferences. Thus, contrary to Parent's argument, evidence related to the existence of the "informal" assessment conducted in January 2019 does not create a disputed material fact in dispute that would preclude summary judgment.[6]

## CONCLUSION

The only fact material to this action is undisputed: Parent desires Student to receive special education services from the District. As a matter of law, to provide those services, the District must complete an appropriate initial evaluation of Student, including information necessary to determine the contents of Student's IEP. As a matter of law, an age-appropriate transition assessment is required to determine the contents of Student's IEP.

The ALJ therefore correctly determined that the District's evaluation would not be appropriate if it did not include the age-appropriate transition assessment. The IDEA does not authorize Parent to provide partial or incomplete consent to the District's proposed initial evaluation, and her qualified consent therefore operates as a refusal to consent. The IDEA also does not provide for a "Homeschool IEP". Because it is undisputed that Parent seeks special education services and the District must complete an appropriate evaluation to provide those services, the undersigned recommends that the Court affirm the order of the ALJ and deny Parent's motion for summary judgment (Dkt. 38).

---

[6] Plaintiff also asserts that the District has "denied the Student access to all Special Education to date." Dkt. 45, p.7. However, the record shows that it was Parent's revocation of her consent for Student to receive special education services (knowing that this would change Student's status to a general education student), and Parent's continued refusal to consent to the District's proposed evaluation, that have denied Student access to the special education services he requires. *See* AR 162, 210-11. On the other hand, the District is attempting to provide special education services to Student by appropriately utilizing the consent override procedures of the IDEA.

REPORT AND RECOMMENDATION - 16

OBJECTIONS AND APPEAL

This Report and Recommendation is not an appealable order. Therefore, a notice of appeal seeking review in the Court of Appeals for the Ninth Circuit should not be filed until the assigned District Judge enters a judgment in the case.

Objections, however, may be filed and served upon all parties no later than **November 23, 2020.** The Clerk should note the matter for **November 27, 2020**, as ready for the District Judge's consideration if no objection is filed. If objections are filed, any response is due within 14 days after being served with the objections. A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served. The matter will then be ready for the Court's consideration on the date the response is due. Objections and responses shall not exceed six (6) pages. The failure to timely object may affect the right to appeal.

DATED this 9th day of November, 2020.

_____
BRIAN A. TSUCHIDA
Chief United States Magistrate Judge

REPORT AND RECOMMENDATION - 17